Filed 6/6/24  In re J.P. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.P. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAUREN P.,<br><br>Defendant and Appellant. | F087210<br><br>(Super. Ct. Nos. JD142110-00, JD142146-00 & JD144129-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Peña, J. and DeSantos, J.

Appellant Lauren P. (mother) appeals from the juvenile court's order terminating her parental rights as to her three minor children at a Welfare and Institutions Code[1] section 366.26 hearing. The order included an order summarily denying her section 388 petition requesting the court return the children to her on family maintenance services or grant additional reunification services. On appeal, mother contends the court erred by summarily denying her section 388 petition.

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, the Kern County Department of Human Services (department) received a referral on behalf of then one-year-old J.P. alleging general neglect by mother due to drug abuse. The investigating social worker contacted mother, who was nine months pregnant at the time. Mother admitted she had not received prenatal care and that she had used methamphetamine and marijuana regularly throughout her pregnancy but denied doing so in J.P.'s presence. She had not sought out substance abuse counseling but was willing to do so.

Mother informed the social worker she was in a relationship with Ricky L. (father), who was the father of her unborn child. She lived with him and J.P., as well as father's ex-wife, S.L., and father's son. Mother denied domestic violence but admitted she and father argued daily, and that she usually threw things at father when they argued. She denied arguing in front of J.P. and stated that J.P. was in the other room with S.L. when they argued. Mother further admitted she had been diagnosed with bipolar disorder, depression, and anxiety, and had stopped taking medication because she was pregnant. Mother agreed to drug test, and the results came back positive for

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

methamphetamine and marijuana. Mother agreed to participate in Voluntary Family Maintenance (VFM) services. The referral was set to be closed.

About a week after the initial referral, in June 2021, S.L. contacted the department and reported that mother was screaming at the top of her lungs with J.P. in her arms and behaving erratically. The investigating social worker advised S.L. to call the police. The next day, the department obtained and served a protective custody warrant. A few days later, mother was placed on a section 5150 hold.

The department filed a juvenile dependency petition on behalf of J.P. on June 3, 2021, alleging she came within the court's jurisdiction pursuant to section 300, subdivision (b). It was alleged J.P. was at risk of harm due to mother's substance abuse and untreated mental illness.

On June 14, 2021, the court ordered J.P. detained from mother.

A couple of days later, mother gave birth to a daughter, R.L. The department received a referral on the day of her birth. It was reported mother had gone to the hospital threatening to hurt the baby and hit her stomach while she was in labor and was asking nurses if they were demons. Further, mother had tested positive for THC and methamphetamine and admitted to using heroin three days prior to R.L.'s birth. R.L. was being treated in the NICU.

The department soon obtained and served a protective custody warrant on behalf of R.L. A petition was filed on June 18, 2021, alleging that R.L came within the court's jurisdiction pursuant to section 300, subdivision (b) because R.L. was at risk of harm due to mother's substance abuse and mental health issues.

Mother subsequently entered inpatient substance abuse treatment and was seeking a mental health assessment and parent/child neglect counseling.

On June 22, 2021, the court ordered R.L. detained from the parents. Father was declared presumed father of R.L. R.L. was placed in the same resource family home as J.P.

At the jurisdictional hearing conducted on August 9, 2021, father was elevated to presumed father of J.P. The parents waived their rights to a jurisdictional hearing as to both children. The court found J.P. and R.L. were described by section 300, subdivision (b) and set the matter out for disposition because the department was in the process of performing Indian Child Welfare Act inquiries.

Due to reasons such as counsel illness and social worker unavailability, the disposition hearing was continued several times and did not take place until January 10, 2022. By the time the dispositional hearing was conducted, mother had completed parenting/child neglect classes, an inpatient substance abuse program, and a mental health assessment. Mother had been testing negative for all substances though some tests were noted to have "suspicious diluting/flushing." As for her mental health services, she was taking prescribed medication but had completed minimal counseling. At the hearing, mother requested the children to be returned home with family maintenance services, and father joined in the request, but the department felt it was "premature" as mother was residing in a sober living facility at the time and had not demonstrated how she would handle living in a less controlled environment. The department recommended family reunification services, and the minors' counsel submitted on that recommendation.

In ruling, the juvenile court commended the parents for doing a "very good job," but noted returning the children home was "just a little bit premature, at this point." The court advised mother it would like to see stability with mental health appointments and continued sobriety for both parents. The court ordered the children removed from the parents' custody and ordered them to receive family reunification services. Mother was ordered to participate in substance abuse services, mental health services, and to comply with medication management.

Following the dispositional hearing, mother completed substance abuse counseling and was discharged from mental health services. Mother provided several negative drug tests but had some presumptive positive outcomes due to not showing up for the test

4.

dates or declining to test. The department informed mother she needed to be evaluated to see if she required further substance abuse counseling. Mother was in a relationship with and lived with father, and the department had determined their home was suitable for the children.

The juvenile court conducted a combined 6- and 12- month status review hearing (§ 366.21, subds. (e) & (f)) on August 25, 2022, where it continued reunification services for both parents to December 2022 in accordance with the department's recommendation. The matter was set for an 18-month status review hearing (§ 366.22).

The parents began having unsupervised visitation with the children, in addition to supervised visitation. In September 2022, mother gave birth to a son, E.L. Initially, the department was recommending return of the children to the parents on family maintenance services at the upcoming 18-month review hearing. They changed their recommendation, however, in response to subsequent events. In November 2022, during a home visit, mother appeared to be under the influence of substances and made several disclosures to the social worker that father had perpetuated threatening behavior toward her and E.L. and had previously been physically abusive toward her. That day, as well as the following day and two more times in December, mother tested positive for alcohol. When confronted with the positive tests, mother admitted she was under the influence of four to five shots of vodka the day of the home visit. She reported she had begun drinking in November due to the end of her relationship with father and estimated she was drinking a half a bottle of vodka per week mixed with soda, and when she was drinking, E.L. was in the care of her stepmother. Mother was aware that her stepmother had a no contact order preventing her from contacting her other grandchildren and reported no concerns with her caring for E.L. Mother's visits reverted to supervised visits.

Due to the aforementioned events, on December 16, 2022, E.L. was placed into protective custody. That day, the department filed a juvenile dependency petition on

5.

behalf of E.L. alleging he came within the court's jurisdiction pursuant to section 300, subdivisions (b) and (j) due to mother's alcohol abuse and prior neglect of J.P. and R.L.

On December 20, 2022, the court declared father to be E.L.'s presumed father and detained E.L. from the parents. E.L. was placed in the same resource family home as J.P. and R.L.

In January 2023, the parents began missing visits. In February 2023, mother provided a test positive for alcohol, amphetamine, methamphetamine, and cannabinoid. Mother reported she had re-entered inpatient substance abuse treatment, but the social worker could not obtain a progress report. Mother began participating in mental health services again. Between August 2022 and April 2023, it was reported the parents missed about half of their scheduled visits with the children with no explanation.

The jurisdictional hearing for E.L. and the 18-month status review hearing for J.P. and R.L. were conducted on May 1, 2023. The parents waived their rights to a hearing as to jurisdiction for E.L. The juvenile court found E.L. came within its jurisdiction under section 300, subdivisions (b) and (j). It continued the matter for disposition as to E.L.

Mother contested the recommendation to terminate services as to J.P. and R.L. and testified on her behalf. She testified she had been living in inpatient treatment since February 24, 2023, and her daily routine included two group meetings. She had been providing negative drug and alcohol tests and had last used marijuana on February 24. She had completed seven out of 16 parent neglect classes. In February, she got a sponsor and had learned to identify her alcohol and drug use triggers and how to utilize "thought-stopping techniques." Though she had been through the program before, this time was different because it was her only chance to get her children back, and she wanted to make herself a better person for them. She had learned what relapse was and how it made her feel and had decided she does not want to live like that. She planned to enter a sober living environment after completing inpatient program in 30 days. She planned to make a scheduled routine for her day and continue talking to her sponsor, going to AA

6.

meetings, and doing outpatient treatment. She was seeing a therapist and taking medication to manage her mental health.

Mother further testified she was in a relationship with father and planned to live with him when she left treatment. She described her relationship as "all positive" and denied any domestic violence between them. She had previously filed for a restraining order because she was influenced by a family member who did not like him. If she were to learn that father was using drugs and alcohol, she would not live with him for the sake of her children, and she would not allow drugs or alcohol around her children.

Counsel for the department made an offer of proof that mother had provided three negative drug tests from April.

The court found that although mother had been doing well for the past couple of months, the department had shown by a preponderance of the evidence that return of the children would create a substantial risk of detriment to their well-being. The court set a section 366.26 hearing as to J.P. and R.L.

On May 31, 2023, the court conducted a dispositional hearing as to E.L. and ordered him removed from the parents' custody. The court ordered the parents would not receive reunification services, pursuant to section 361.5, subdivision (b)(10), finding the parents had failed to reunify with J.P. and R.L. and had not subsequently made a reasonable effort to treat the problems that led to their removal. The court set a section 366.26 hearing for E.L. to coincide with that calendared for J.P. and R.L.

The department's section 366.26 report dated August 14, 2023, recommended parental rights be terminated as to all three of the children and that a permanent plan of adoption with their care provider be ordered. J.P. and R.L. had been with their care provider since July 2021, and E.L. was placed there in December 2022. Over the course of the proceedings, mother visited with J.P. and R.L. 88 times out of a total of 222 opportunities to visit, and she visited with E.L. 24 times out of a total of 66 opportunities to visit. J.P. lived with mother for the first year and seven months of her life, R.L. was

7.

detained at six days old, and E.L. lived with mother for the first three months of his life. The department opined the relationship between mother and the children had diminished since the children's detentions. The children's care providers were committed to adopting them, and it was reported the children had formed an attachment with the care providers.

The section 366.26 hearing was originally supposed to take place on August 24, 2023, but was continued to allow the department to give proper notice to one of J.P.'s alleged fathers.

On November 16, 2023, the day of the continued section 366.26 hearing, mother filed a section 388 petition for each child requesting the children be returned to mother on family maintenance services or order six additional months of family reunification services. For changed circumstances, mother alleged she had "completed her case plan, in addition to anger management and a new substance abuse regimen. She has provided a series of clean drug tests, has separated herself from the father, and resides in sober environment at The Mission." As to why the order would be in the best interests of the children, mother alleged, "Children have consistently visited with mother. Mother and children are bonded to each other as well as to mother. Children have greater success when raised with their family. Children will be protected by Mother."

Mother attached several documents to her petitions, including several documents related to her substance abuse treatment indicating she was receiving treatment and doing well as recently as August 2023.

At the hearing, the court indicated the section 388 petitions had been filed at 9:11 that morning. Mother's counsel requested the court set a future evidentiary hearing on the petition. Minors' counsel and counsel for the department both indicated they had not had a chance to review the petitions and asked the court to go forward on the section 366.26 hearing. The court indicated that it had reviewed the section 388 petitions and

determined they did not establish how mother's request would be in the children's best interests and denied the petitions on their face.[2]

As for the section 366.26 hearing, counsel for both parents objected but presented no further argument or evidence. Minors' counsel submitted on the department's recommendation and noted the children were doing very well with their care providers. The court found the children were likely to be adopted and terminated parental rights.

## DISCUSSION

We review the juvenile court's summary denial of mother's section 388 petitions for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

A parent petitioning the court to modify a prior dependency order pursuant to section 388 must show the existence of changed circumstances or new evidence justifying the proposed change and that the proposed change is in the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A parent need only make a prima facie showing of these elements to trigger the right to an evidentiary hearing, and courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310 (*Marilyn H.*).) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child,

---

[2]     The court later issued written orders indicating the petitions had not stated new evidence or changed circumstances and that the requests did not promote the best interest of the children.

the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

After reunification services have been terminated, to make a showing of changed circumstances, the problem that initially brought the child within the dependency system must be removed or ameliorated. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) The change must be "substantial." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)

Further, at that point in the proceedings, a parent's interest in the care, custody, and companionship of the child is no longer paramount. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The focus has shifted from family reunification to stability and permanence for the child. (*Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) Accordingly, after a parent fails to reunify with a child and a permanent plan of guardianship has been ordered, "the court must turn its focus to the child's best interests, rather than the parent's, in deciding issues that may arise." (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1559.) There is a rebuttable presumption that continued out-of-home placement is in the best interest of the child. (*Marilyn H.*, at p. 310.)

Applying these principles, we cannot say the juvenile court abused its discretion in summarily denying mother's petitions. The court reasonably concluded the petitions did not state a prima facie case the requested order was in the children's best interests. Here, on the day of the continued section 366.26 hearing, mother sought to continue the dependency proceedings, which had been initiated over 30 months prior, first by delaying the section 366.26 hearing for a separate evidentiary hearing on her petition, and again by ordering her more services. Mother alleged she was continuing her sobriety but did not allege specifically how she was able to immediately provide a stable home for the

10.

children.  In contrast, the children were placed together with care providers who wished to adopt them, and with whom they had spent most of their young lives; in R.L.'s case, nearly her entire life.  Mother's allegations did not adequately account for the shift in focus from reunification toward stability and permanence, and in light of the circumstances of the case, the children's interests in stability outweighed any interest they may have had in the possibility of reunification with mother.  (*Marilyn H.*, *supra*, 5 Cal.4th at p. 309; *In re A.S.* (2009) 180 Cal.App.4th 351, 358; *In re Edward H.* (1996) 43 Cal.App.4th 584, 594; see *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530–531.)

*In re Aljamie D.* (2000) 84 Cal.App.4th 424, the primary case relied on by mother, is distinguishable.  In *Aljamie D.*, a mother filed a section 388 petition seeking to modify the order placing her nine and 11–year–old daughters in long-term foster care.  She alleged she fully complied with her case plan, visited the children consistently, and the children wanted to return to her.  The juvenile court denied her petition ex parte.  (*Id*. at p. 428.)  During a contested section 366.26 hearing, the daughters testified they wanted to live with their mother.  (*Aljamie D.*, at p. 430.)  Nevertheless, the juvenile court ordered the daughters into legal guardianship with their maternal aunt and the mother appealed, alleging she was entitled to an evidentiary hearing on her section 388 petition.  (*Aljamie D.*, at p. 431.)  The appellate court agreed, concluding that the mother's petition made a prima facie showing that the best interests of her daughters would potentially be advanced by her request for a change in the placement order.  The court cited the fact that the girls repeatedly "made clear that their first choice was to live with their mother."  (*Id*. at p. 432.)  The court clarified, "While a child's wishes are not determinative of her best interests, the child's testimony that she wants to live with her mother constitutes powerful demonstrative evidence that it would be in her best interest to allow her to do so."  (*Ibid*.)

The appellate court *In re Angel B.* (2002) 97 Cal.App.4th 454, cited by the department, in analyzing *Aljamie D.*, put great weight on the children's repeated wishes in that case to live with the mother.  As that court emphasized, "other cases have held that

simple completion of the kinds of classes taken by the mother in *In re Aljamie D.* and by [the appellant parent in *Angel B.*] does not, in and of itself, show prima facie that either the requested modification or a hearing would be in the minor's best interests." (*Angel B.*, at pp. 462–463.)

The present case is more like *Angel B.* than *Aljamie D.* Unlike the children in the present case, the children in *Aljamie D.* were older and more fully cognizant of their desires and repeatedly expressed they wished to live with their mother, which we agree with the *Angel B.* court was a significant factor. Here, while mother had commendably maintained her sobriety, the children were very young and, though too young to give meaningful statements on their desires, were, by all accounts, stable and doing well in a home where they were deemed likely to enjoy the permanence of adoption. As we have stated, mother did not state a prima facie case as to why disruption of that in exchange for a delay of permanence for mother to receive more services would have been in their best interests, particularly in light of the posttermination shift in focus away from reunification and towards stability and permanence.

For these reasons, we find no abuse of discretion and no error.

## DISPOSITION

The juvenile court's November 16, 2023 orders are affirmed.